IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| TOLULOPE ODUBELA, § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-15-3053 |
| § | |
| EXXON MOBIL CORPORATION, § | |
| Defendant. § | |

# MEMORANDUM AND ORDER

This race discrimination and retaliation case is before the Court on the Motion for Summary Judgment ("Motion") [Doc. # 58] filed by Defendant Exxon Mobil Corporation ("Exxon"), to which Plaintiff Tolulope Odubela filed a Response [Doc. # 66], and Exxon filed a Reply [Doc. # 68]. Having reviewed the full record and applicable legal authorities, the Court **grants** the Motion.

## I. BACKGROUND

Plaintiff, who was born in Nigeria, is a resident of Houston, Texas. Plaintiff identifies himself as a black male whose race is "Sub-Saharan African."

Plaintiff began working at Exxon as an intern in 2007. During his internship, Plaintiff expressed a willingness to work for Exxon in Nigeria. *See* Plaintiff's Depo., Exh. C to Motion, p. 49.

In October 2008, after he completed his internship, Plaintiff was offered and accepted a full-time position with Exxon as a Public & Government Affairs Advisor. Alexandra Roberts-Judd was Plaintiff's supervisor. Plaintiff has presented evidence that he received positive comments from Roberts-Judd regarding his performance, and that he received pay increases in 2009 and 2010. Exxon has presented evidence that by September 2009, Roberts-Judd had concerns regarding Plaintiff's failure to complete assignments in a timely manner, and the frequent need to edit his writing. As was the case during his internship, Plaintiff continued to express a willingness to be assigned to work for Exxon in Africa in the future.

In January 2010, Nora Scheller became Plaintiff's supervisor. Plaintiff has presented sworn testimony that, for most of that year, his frequent interactions with Scheller were positive, and that Scheller never expressed any concerns regarding Plaintiff's performance. Exxon has presented evidence that Scheller soon found Plaintiff's work product and performance to be "well below average" for an Exxon employee in his position and with his experience. Exxon has presented evidence that Scheller counseled Plaintiff regarding his failure to deliver on his self-imposed time commitments, his problems with general time management, and his poor writing ability. Plaintiff testified that he expressed to Scheller a willingness to be assigned to work for Exxon in Africa. *See id.* at 88.

Plaintiff has presented evidence that, after he mentioned to Scheller in October 2010 that he was originally from Nigeria, Scheller began to complain generally about his performance and suggested that he explore other positions that might be a "better fit" for him. Plaintiff states under oath that Scheller asked him if he had considered moving back to Nigeria and stated that she did not believe Plaintiff had what it takes to make it in the United States. Exxon has presented evidence that Scheller knew well before October 2010 that Plaintiff was from Nigeria, noting that his resume included his education at the University of Nigeria.

Plaintiff states under oath that Scheller failed to give him any specific information regarding his allegedly poor performance, except to mention his lack of eye contact. Plaintiff states that he explained to Scheller that lack of eye contact was a trait stemming from his ancestry and cultural background in which direct eye contact is considered rude. In his deposition, Plaintiff testified that he told Scheller that he was from Nigeria, but did not say that he was a member of the Sub-Saharan African race. *See id.* at 159. Plaintiff testified also that he does not distinguish between being from Nigeria and being a member of the Sub-Saharan African race. *See id.* at 158. Plaintiff conceded, however, that some individuals from Nigeria may not be of the Sub-Saharan African race, and clearly the Sub-Saharan African race encompasses individuals from many diverse nations throughout Sub-Saharan Africa.

In January 2011, Scheller met with Plaintiff to discuss a Performance Improvement Plan ("PIP"). Plaintiff and Scheller agreed to meet bi-monthly to follow up on the PIP. Plaintiff has presented sworn testimony that Scheller refused to provide specific feedback regarding his work performance except to comment on his lack of eye contact. Exxon has presented evidence that Scheller provided Plaintiff with specific examples of the problems with his work product and performance. Plaintiff admits that before he was placed on the PIP, he was ranked in the bottom third relative to his peers at Exxon. Exxon has presented evidence that his low ranking was based, in part, on negative feedback from Knowledgeable Others ("KOs"), individuals at Exxon selected by Plaintiff to provide feedback. Plaintiff has presented evidence that, although some of the KOs' feedback was negative, some of it was positive.

Plaintiff has presented evidence that, after Scheller again commented on his "inability to make it in the United States" during a PIP meeting on May 9, 2011, he complained to Exxon's Human Resources Department about Scheller's repeated references to ethnic and cultural traits that Plaintiff attributes to members of the Sub-Saharan African race. Plaintiff also complained about Scheller's repeated questioning of Plaintiff's ability to succeed in the United States. Plaintiff believes that Scheller

targeted him and set him up for termination because he is of the Sub-Saharan African race.

Plaintiff's employment with Exxon was terminated on September 14, 2011. Plaintiff alleges that he was terminated because of his Sub-Saharan African race.

Plaintiff filed his First Amended Complaint on February 29, 2016, asserting a race discrimination claim and a retaliation claim under 42 U.S.C. § 1981. Discovery has ended, and Exxon has moved for summary judgment on both claims. The Motion has been fully briefed and is now ripe for decision.

## II. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides for the entry of summary judgment against a plaintiff who fails to make an adequate showing of an element essential to his case and on which he will bear the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex*, 477 U.S. at 322-23; *Curtis*, 710 F.3d at 594.

On a motion for summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839 (5th Cir. 2012). The moving party, however, "need not negate the elements of the nonmovant's case." *Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)). The moving party may meet its burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citing *Celotex*, 477 U.S. at 323; *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004); *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action." *Spring Street Partners-IV, L.P. v. Lam*, 730 F.3d 427, 435 (5th Cir. 2013). "A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.'" *Pioneer Exploration, L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002); *accord Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present evidence which shows "the existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (citation and internal quotation marks omitted). In the absence of such evidence, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court may make no credibility determinations or weigh any evidence. *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage Co.*, 336 F.3d at 412-13). The Court is not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence. *Id.* (citing *Reaves Brokerage*, 336 F.3d at 413); *accord, Little*, 37 F.3d at 1075.

### III.  SECTION 1981 RACE DISCRIMINATION CLAIM

Race discrimination claims under § 1981 and disparate treatment claims under Title VII require proof of intentional discrimination on the basis of the plaintiff's race, and they are considered under the same legal standards. *See Jackson v. Watkins*, 619 F.3d 463, 466 (5th Cir. 2010). A race discrimination claim under § 1981 may be asserted by "identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987); *see also Alvarado v. Shipley Donut Flour & Supply Co., Inc.*, 526 F. Supp. 2d 746, 754 (S.D. Tex. 2007); *Reedy v. Citgo Petroleum Corp.*, 2011 WL 797498, *4 (S.D. Tex. Feb. 28, 2011). In this case, Plaintiff is Nigerian, asserting protected status as a member of the Sub-Saharan African race. A race discrimination claim can be established through either

direct or circumstantial evidence. *See Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

## A. **Direct Evidence**

Plaintiff has presented evidence that Scheller (1) asked him if he had considered accepting an assignment with Exxon in Nigeria, (2) suggested he did not have what it takes to make it in the United States, and (3) commented on his lack of eye contact. For comments in the workplace to qualify as direct evidence of discrimination, they must be (1) related to the plaintiff's protected class; (2) near in time to the adverse employment action; (3) made by an individual with authority to make the employment decision at issue; and (4) related to the employment decision at issue. *See Stone v. Par. of E. Baton Rouge*, 329 F. App'x 542, 545-46 (5th Cir. 2009).

Plaintiff states that he believes these comments were related to his race, the first requirement for workplace comments to qualify as direct evidence of race discrimination. The evidence, however, does not support his belief. It is undisputed that Plaintiff expressed an interest in an assignment with Exxon in Africa, including Nigeria, his country of national origin. There is no evidence that suggests that Scheller's comments regarding such an assignment, or her comments regarding his ability to "make it" in the United States, related in any way to his Sub-Saharan African race. Indeed, there is no evidence that Scheller was aware that Plaintiff

considered himself a member of the Sub-Saharan race, only that Plaintiff told her he was from Nigeria.[1] Similarly, there is no evidence that lack of eye contact is an ethnic trait of members of the Sub-Saharan African race, or that Scheller considered it one. Plaintiff has failed to present evidence that raises a genuine issue of material fact regarding direct evidence of race discrimination based on his Sub-Saharan African race.

B. **Circumstantial Evidence - *McDonnell Douglas* Analysis**

Where a plaintiff does not have direct evidence of discrimination, his claims are considered under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, the plaintiff must establish a *prima facie* case of discrimination.[2] *See Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011);

---

[1] Plaintiff argues in his Response that an employer can discriminate against an employee of the basis of race "regardless of whether or not she actually knew his specific race at the time she treated him differently." *See* Response [Doc. # 66], p. 16. Plaintiff cites no legal authority to support this argument. Indeed, case law is to the contrary. *See, e.g., Harris v. Dow Chem. Co.*, 586 F. App'x 843, 846 (3d Cir. 2014) (inference of discrimination may be raised only if the relevant decision-maker has knowledge of the plaintiff's status as a protected class member); *Batteast Constr. Co. v. Henry Cnty. Bd. of Comm'rs*, 194 F. Supp. 2d 828, 835 (S.D. Ind. 2002) (county could not discriminate on basis of race absent knowledge of contractor's race).

[2] In this case, Exxon has articulated a legitimate, non-discriminatory reason for its decision to terminate Plaintiff's employment – his allegedly poor work performance. Nonetheless, this Court must first make a definitive finding regarding whether Plaintiff has established a *prima facie* case of discrimination (or retaliation) before addressing the issue of pretext. *See Hague v. Univ. of Tex. Health Sci. Cntr.*, 560 F. App'x 328, 334 (5th Cir. Mar. 28, 2014).

*Hunter v. Union Pac. R. Co.*, 2013 WL 3229910, *4 (S.D. Tex. June 25, 2013) (Rosenthal, J.). In cases involving the termination of employment, the elements of a *prima facie* case are: (1) the plaintiff is a member of a protected class; (2) he was qualified for his position; (3) he was subject to an adverse employment action; and (4) he was replaced by someone outside the protected class or, in the case of disparate treatment, was treated more harshly than others who were similarly situated. *See id.* (citing *Bouie v. Equistar Chems. LP*, 188 F. App'x 233, 236-37 (5th Cir. 2006); *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001)).

In this case, Plaintiff has presented evidence that he is a member of the Sub-Saharan African race (although there is no evidence that Scheller knew Plaintiff considered himself a member of that race), that he was qualified for his position at Exxon, and that he was subjected to an adverse employment action when his employment with Exxon was terminated. It is undisputed, however, that Plaintiff was not replaced following his termination. Instead, it is undisputed that his duties were divided among the remaining Public & Government Affairs Advisors. Plaintiff has also failed to present evidence of Public & Government Affairs Advisors at Exxon who were not members of the Sub-Saharan African race, had similar performance records, had similar low peer rankings, were also placed on a Performance Improvement Program, yet were not terminated.

Plaintiff has failed to present evidence that raises a genuine issue of material fact regarding the fourth element of his *prima facie* case. Absent evidence that Plaintiff was replaced by someone not of his race, or that similarly-situated Public & Government Affairs Advisors not of his race were treated more favorably, Defendant is entitled to summary judgment on the § 1981 race discrimination claim.

## IV.     SECTION 1981 RETALIATION CLAIM

A plaintiff asserting a § 1981 claim of retaliation must first make a *prima facie* case under the *McDonnell Douglas* burden-shifting framework. *See Foley v. Univ. of Houston Sys.*, 324 F.3d 310, 316 (5th Cir. 2003) (same elements for *prima facie* case of retaliation under § 1981 and Title VII). To establish a *prima facie* case of retaliation under § 1981, a plaintiff must present evidence that (1) he engaged in an activity protected by § 1981, (2) he suffered an adverse employment decision, and (3) a causal link exists between the protected activity and the adverse decision. *See Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008).

In this case, Plaintiff has failed to present evidence that raises a genuine issue of material fact regarding the third element. In early May 2011, Plaintiff complained to Exxon's Human Resources Department regarding perceived race discrimination by

Scheller.[3] At that time, however, Plaintiff was already ranked in the bottom third of his peer group based on his work performance in 2009 and 2010, he had already been counseled – either generally or specifically – about poor work product and performance, and he had already been on the PIP for four months. He had already received negative comments from his prior supervisor and from his KOs. As a result, Plaintiff has failed to raise a fact dispute in connection with his *prima facie* case of § 1981 retaliation, and Defendant is entitled to summary judgment on this claim.

## IV. CONCLUSION AND ORDER

Plaintiff has failed to present evidence that raises a genuine issue of material fact regarding his § 1981 claims of race discrimination and retaliation. As a result, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 58] is **GRANTED** and this case is **DISMISSED WITH PREJUDICE**. The Court will issue a separate final judgment.

---

[3] Plaintiff states that he was told by his Human Resources contact that his complaint had been investigated and it was determined that Scheller had no intent to discriminate against him.

SIGNED at Houston, Texas, this **4th** day of **August, 2017**.

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE